CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 20 2019

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PHILLIP S. WOHLFORD, KEVIN BALLANCE, | ) ) CASE NO. 7:18CV00224 |
| Plaintiffs, | ) ) |
| v. | ) MEMORANDUM OPINION ) |
| MELVIN DAVIS, ET AL., | ) By: Glen E. Conrad ) Senior United States District Judge |
| Defendants. | ) |

Phillip S. Wohlford and Kevin Ballance, proceeding pro se, filed this civil rights action as co-plaintiffs pursuant to 42 U.S.C. § 1983, complaining about prison officials' interference with their constitutional rights to write a book together. After review of the record, the court concludes that the § 1983 claims against defendants in this district must be summarily dismissed. The court will, however, grant plaintiff Ballance's motion to amend to raise a state law claim based on events that occurred here. Finally, the court will sever the claims against defendants located in the United States District Court for the Eastern District of Virginia and transfer them to that court.

I.

The plaintiffs allege the following sequence of events giving rise to their claims.[1] For several years, Ballance, a Virginia inmate, has been compiling a book manuscript that includes photographs.[2] Wohlford operates a home business in the Roanoke area called Typing and Inmate Services. Ballance promised him a third of the "gross sales" from the book when it is published, and in exchange, Wohlford has been assisting Ballance with research and printing for the book,

---

[1] The complaint does not include a clear and complete statement of plaintiffs' claims or facts. Therefore, the court bases this summary of their allegations and claims on their submissions as a whole. See, e.g., ECF Nos. 1, 43.

[2] Ballance describes the manuscript as "a foreign film guide with 1000's of film titles, descriptions and cast. Fully illustrated." Compl. 4, ECF No. 1.

among other things. Compl. 4, ECF No. 1. On November 27, 2017, while Ballance was incarcerated at Green Rock Correctional Center ("GRCC"), he was told to pack up his personal property for a transfer to another Virginia Department of Corrections ("VDOC") facility, Sussex I State Prison ("Sussex I"). He gathered his things and reported to the property office. There, Officer Naff "discovered the book manuscript . . . and told Ballance that he was going to sign a paper saying that he can destroy the book manuscript." Id. Ballance submits a copy of this form, entitled Notice of Confiscation of Property, and dated November 27, 2017. It states: "This is to notify you that the below listed personal property is contraband/unauthorized for possession by you and is subject to confiscation by the facility." Compl. Exh. 5, ECF No. 1-1. The confiscated items are described as "22 homemade photo albums," the reason noted for seizure is "contraband," and the current location is noted as "storage." Id. Naff signed and dated the form. Someone wrote on the offender signature line "Refused to Sign," and Officer Marion signed as a witness to that fact.

The confiscation form also describes an inmate's opportunity to file a grievance about the confiscation of the items:

> You may appeal through the Offender Grievance . . . Procedure. To be considered, your written Offender Grievance . . . must be submitted within 7 days of receipt of this notice. This confiscation notification completes the informal process of the Offender Grievance Procedure. You must provide staff with evidence of your ownership of any items you claim should not be confiscated.

Id. Another section on the form is titled: "ITEMS FOR WHICH THE OFFENDER HAS ESTABLISHED OWNERSHIP." Id. According to the form, if an inmate establishes ownership of items that he is not authorized to possess at the facility, officers must provide him with a property disposition form, which he must complete and return to the property department within

2

five days. If he fails to do so, "the property will be confiscated and disposed of by the facility." Id.

The plaintiffs allege that "the VDOC [has been] after Ballance's book manuscript" and that all of the defendants in this lawsuit conspired to accomplish that goal. Id. at 5-6. Ballance filed an earlier lawsuit about an incident in December 2013, when the manuscript was confiscated in conjunction with his transfer from one VDOC prison to another. See Ballance v. Clarke, No. 7:15CV00645, 2017 WL 1169747 (W.D. Va. Mar. 28, 2017). Ballance now alleges that on that occasion, he refused to sign a form, officials took the manuscript, and later, officials at GRCC returned it to him. Compl. 7-8, ECF No. 1. In November 2017, Ballance attempted the same tactic and refused to sign the form. Naff and Marion, along with Officer Crumpler and Mrs. Sims, tried to convince him to sign. Officer Davis "refused to intervene." Id. at 5. Ultimately, the book manuscript was destroyed in January 2018. See id.

When an inmate is transferred from one VDOC prison facility to another, only one box of personal property items travels with him. Any excess property items are placed in boxes, and the inmate must pay the shipping costs to have them forwarded to the new facility. On November 27, 2017, Ballance signed a form, authorizing payment from his inmate trust account to ship his boxes of excess personal property to S1SP. See Obj. 6, ECF No. 43. Nevertheless, some boxes of his excess property items were not shipped to him and were ultimately destroyed. Officials have indicated to him that the boxes were destroyed because he did not, in fact, sign authorization for the shipping costs. Id.

Ballance also complains that the defendants took or destroyed several books that he valued.³ Compl. 8, ECF No. 1. These books were not confiscated as contraband, and he received no paperwork about them. He contends that this deprivation occurred as "punishment," because he refused to sign the confiscation notice about his book manuscript. Id. at 9.

Allegedly "[a]s punishment for refusing to allow the defendants to take the movie book manuscript, Marion and Crumpler denied Ballance access to" some books. Id. at 13. Specifically, they "denied Ballance access to an approved book by the Publications Review Committee ("PRC"). They [refused] to forward two books on appeal to Harold Clarke, and they [refused] to send a book to the PRC." Id. Ballance identifies these books, respectively, as Ten Southeast Asian Tribes (allegedly stolen by Marion and Crumpler); two books on nude beaches and resorts (allegedly destroyed by these defendants); the 2008 version of 1001 Movies You Must See before You Die (stolen by these defendants); and Exposed (not mailed to the PRC).⁴ Id. at 14-18. The PRC has approved the 2012 version of 1001 Movies You Must See before You Die, which Ballance characterizes as an inconsistent application of VDOC anti-nudity policy for incoming publications.

After Ballance arrived at S1SP, Ballance "tried to push forward with the book." Id. at 12. He received one box of his excess personal property from GRCC that was accidently sent with another inmate. Id. at 10. Included in that box was an "illus[t]ration list" for the book, so Ballance

---

³ Ballance lists the titles of the missing books as follows: The Moving Picture Boy, 1895-1995; Cinema Year by Year 1895-1995; Film History; The Life and Times of Our Gang; The Actors Encyclopedia; Videohound Movie Guide 2010; and Videohound Movie Guide 2015.

⁴ In response to interrogatories, the defendants have informed Ballance that these books have been previously disapproved by the PRC: Ten Southeast Asian Tribes from Five Countries, North American Guide to Nude Recreation, World Guide to Nude Beaches and Resorts, and Exposed. See ECF Nos. 25-5 and 25-7. When an inmate attempts to obtain a publication that the PRC has previously disapproved, VDOC policy does not permit the inmate to seek PRC approval for it. See ECF No. 25-7.

and Wohlford "worked on that." Id. at 12. "But once S1SP discovered that Ballance and Wohlford were still working, Lt. Mayo and Sgt. Ev[a]ns were sent to Ballance's cell to take any movie information they could find by Spencer and Zook. They took the movie list and the proof sheets that Ballance had received in the mail from Wohlford." Id.

Officials at S1SP also began denying Ballance the commercial proof sheets of photographs that Wohlford mailed to him for the book. Although Wohlford has a home business, officials classified the photographs he mailed to Ballance as personal photographs and "denied them." Id. No one notified Wohlford that his mail was being stopped.

Ballance and Wohlford both signed the verified § 1983 complaint on January 11, 2018, suing the following individuals: Davis, Crumpler, Marion, Naff, and Sims ("GRCC defendants"); Zook, Mayo, Evans, and John Doe/Spencer ("S1SP defendants"); and David Robinson and Harold Clarke, both VDOC administrators ("administrative defendants"). Liberally construing the plaintiffs' submissions, they allege the following claims for relief: (1) the GRCC defendants destroyed Ballance's manuscript to punish or retaliate against him for exercising his First Amendment right to write a book; (2) because Ballance refused to sign the confiscation form regarding the manuscript, the GRCC defendants destroyed several boxes of Ballance's personal property and prevented him from possessing several books; (3) the administrative defendants allowed the PRC to apply the anti-nudity policy inconsistently regarding inmates' incoming publications; (4) the S1SP defendants conspired with GRCC defendants to confiscate additional materials from Ballance related to his book manuscript; and (5) S1SP defendants interfered with correspondence between the two plaintiffs, despite Wohlford's status as a home business. Legally, the plaintiffs contend that the defendants violated their rights under the First, Fifth, and Fourteenth

Amendments to the Constitution. As relief, the plaintiffs seek unspecified injunctive relief, as well as compensatory and punitive damages and costs.

The GRCC defendants have moved for summary judgment, and the S1SP defendants have moved for severance and transfer of the claims against them to the Richmond Division of the United States District Court for the Eastern District of Virginia, an action to which the plaintiffs have objected. Ballance has also filed a motion to amend to add a supplemental state law claim alleging breach of contract by the administrative defendants.

II.

A. Summary Dismissal Standard of Review.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). "The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under [42 U.S.C. § 1983] by a prisoner . . . if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1). To avoid dismissal, a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[5] (internal citations and quotation marks omitted).

---

[5] The court has omitted internal quotation marks, alterations, and citations, here and throughout this memorandum opinion, unless otherwise noted.

B. The GRCC Claims.

1. Retaliation.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). To succeed on their First Amendment retaliation claims,[6] the plaintiffs must show that (1) they engaged in constitutionally protected speech, (2) the defendants took retaliatory action that adversely affected their protected speech, and (3) "a causal relationship exists between [their] speech and the [defendants'] retaliatory action." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013). Because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se]" to the prisoner's conduct, a prisoner's claims of retaliation must be approached with skepticism. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

The plaintiffs' primary claims against the GRCC defendants allege that these officials retaliated against the plaintiffs for writing the book—by taking and destroying the manuscript, by destroying Ballance's property boxes, and by preventing him from possessing various books he desired. The allegations in support of the plaintiffs' retaliation claims fail on the first and third prongs of the retaliation analysis.

The plaintiffs may have a First Amendment right to write the book, to express Ballance's opinions and artistic viewpoints in it, and perhaps, to market it one day so that they can both earn some money from it. They were not exercising a constitutional right, however, by having Ballance possess their book in a VDOC prison in the form of 22 handmade photo albums—a format that

---

[6] The plaintiffs do not invoke any particular grounds as a basis for Wohlford's interest in the manuscript. He accepted that interest with the understanding that Ballance would possess the bulk of the manuscript in a VDOC facility, subject to VDOC regulations and other risks inherent in a prison setting. Accordingly, the court will presume without finding that Wohlford's legal interests and claims parallel those of Ballance.

VDOC regulations classify as contraband. The plaintiffs also were not exercising a constitutional right when Ballance refused to sign the Notice of Confiscation of Property form as a first step in the VDOC procedure to appeal officials' characterization of the book as contraband.

The plaintiffs' allegations also fail on the causation prong of the retaliation analysis. By the terms of confiscation form itself, it was Ballance's refusal to sign the form or appeal the confiscation that resulted in the destruction of the homemade photo albums.

The plaintiffs make conclusory assertions that the defendants took and destroyed the photo albums in furtherance of a years-long, VDOC-wide conspiracy to prevent Ballance from finishing his book. To establish a § 1983 conspiracy claim, the plaintiffs "must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to accomplish a common and unlawful plan to violate the plaintiff[s'] federal rights." Snodgrass v. Messer, No. 7:16CV00050, 2017 WL 975992, at *3 (W.D. Va. Mar. 10, 2017), aff'd, 694 F. App'x 157 (4th Cir. 2017), cert. denied, 138 S. Ct. 1262, 200 L. Ed. 2d 416 (2018). As such, a complaint's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Hinkle v. City of Clarksburg, 81 F.3d 416, 422 (4th Cir. 1996). Merely labeling a chronological series of actions by multiple individuals as a "conspiracy," providing only a conclusory, formulaic recitation of the legal elements of conspiracy, or offering "bare assertions devoid of further factual enhancement fail to constitute well-pled facts" that the reviewing court must accept as true. Iqbal, 556 U.S. at 678. The court also need not consider "unwarranted inferences, unreasonable conclusions, or arguments" as true. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)

The plaintiffs' allegations of conspiracy or some loosely formed joint effort among prison officials to stop their book writing efforts by deeming the manuscript to be contraband fall squarely into the category of "rank speculation and conjecture" that the court need not accept as true. Hinkle, 81 F.3d at 422. The plaintiffs rely heavily on the incident at issue in Ballance's prior lawsuit—when the parts of the manuscript were deemed contraband, but were returned to him later, despite his failure to sign a form about the property.[7] Those events, however, do not support a reasonable inference that any of the defendants in this lawsuit reached an agreement among themselves to prevent the plaintiffs' completion of the book in violation of their constitutional rights. Rather, the return of the manuscript parts on that earlier occasion supports, at most, an inference that during the past incident, prison officials chose, for whatever reason, not to strictly enforce aspects of VDOC policy on contraband and unauthorized personal property, to the plaintiffs' benefit.

The plaintiffs similarly present no facts supporting reasonable inferences of a conspiracy to punish the plaintiffs for their book-writing efforts by failing to ship excess property boxes to Ballance or denying him access to certain publications. The court has combed the plaintiffs' submissions and is satisfied that their threadbare conspiracy allegation, based on speculation and labels—provides no basis in fact sufficient to warrant further development in this lawsuit. For the stated reasons, the court will summarily dismiss the plaintiffs' claims of retaliation and conspiracy, pursuant to § 1997e(c), for failure to state a claim upon which relief can be granted.

---

[7] In Ballance's prior lawsuit, the defendants provided evidence that Ballance had not signed a Release of Liability form as required for him to possess his personal property. Ballance, 2017 WL 1169747 at *2. Ballance now asserts that the form he refused to sign on that prior occasion was the same form that he presents to the court in this case—the Notice of Confiscation form.

2. Due Process.

At the heart of the plaintiffs' case is a simple claim that the defendants wrongfully and intentionally deprived them of personal property items. The Fourteenth Amendment provides that, "no state shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XVI, § 1. Where a deprivation of property results from application of an established state procedure, "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982). "[T]he State certainly accords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule" Id. at 437.

The court concludes that these procedural requirements were met in this case. The defendants provided Ballance an opportunity to be present and present the plaintiffs' claim of entitlement before the manuscript parts were confiscated. The defendants also offered the plaintiffs an option to pursue an appeal of the characterization of those items as contraband and potentially prevent their destruction. Ballance chose not to participate in the appeal process—by refusing to sign the confiscation form as the first step in that procedure. During appeal proceedings, he could have asked for clear characterization of the "photo albums" as unauthorized property items and then arranged for disposal of those items by mailing them to Wohlford. Instead, Ballance chose, by his failure to appeal, to allow the destruction of the manuscript by operation of the policy itself.[8]

---

[8] Indeed, Ballance's refusal to sign the Notice of Confiscation form also represented a choice not to take the first required step in the VDOC's grievance procedures, as described on the form itself. His failure to properly exhaust available administrative remedies provides an alternative basis for dismissal of the plaintiffs' § 1983 claims concerning the destruction of the manuscript, as the defendants argue. See 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before filing federal court action).

10

The plaintiffs also allege that the defendants, in contravention of policy, failed to honor the postage withdrawal form that Ballance signed to authorize shipment of his property boxes. Similarly, they complain about some of Ballance's books being stolen or wrongfully kept from him. To the extent that the plaintiffs are claiming "an unauthorized intentional deprivation of property by a state employee," such allegations "do not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In this case, the plaintiffs possess remedies under Virginia state law to seek reimbursement for the value of the property items that they allege the defendants wrongfully took. See, e.g., Va. Code § 8.01-195.3 ("Virginia Tort Claims Act" or "VTCA"). The Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985). The availability of a tort action in state court fully satisfies the requirement of meaningful post-deprivation process. Hudson, 468 U.S. at 536. Thus, the court is satisfied that the plaintiffs cannot prevail in a constitutional claim for the deprivation of the property items at issue by GRCC officials and will summarily dismiss their § 1983 claims accordingly.

3. Inconsistent Enforcement of Policy.

As a third claim against the GRCC defendants, the plaintiffs apparently complain that the PRC does not consistently apply a VDOC regulation banning incoming publications that depict nudity. The complaint mentions two similarly titled publications, one of which was approved by the PRC, while the other was not approved. The plaintiffs want to hold the administrative defendants liable for this inconsistency in enforcement. The court can find no respect in which these allegations give rise to a claim of constitutional proportions. This court has rejected claims

11

that the anti-nudity policy itself violates inmates' constitutional rights. See Fauconier v. Clarke, 257 F.Supp.3d 746 (W.D. Va. 2017), aff'd, 709 F. App'x 174 (4th Cir. 2018), cert. denied, No. 18-7762, 2019 WL 1231914 (U.S. Mar. 18, 2019). In so doing, the court also specifically held that occasional inconsistencies in application of a policy, based on the discretion granted to the decisionmakers, do not render that policy unconstitutional. Id. at 762. For the stated reasons, the court will summarily dismiss the plaintiffs' § 1983 claims that PRC decisions about incoming publications are sometimes, arguably, inconsistent.

4. Administrative Defendants.

The court will also summarily dismiss the plaintiffs' § 1983 claims against Clarke and Robinson. The complaint fails to allege any action or omission undertaken by these defendants related to the plaintiffs. These individuals cannot be liable under § 1983 for failing to correct or prevent alleged constitutional violations committed by the other defendants, particularly since the court has already found that their subordinates' conduct does not give rise to any constitutional claims actionable under § 1983. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding that under § 1983, supervisory "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights"). Accordingly, the court will summarily dismiss the plaintiffs' § 1983 claims against Clarke and Robinson related to the alleged events at GRCC.[9]

C. The Motion to Amend.

Well after the court served the complaint in this case, Ballance filed a motion to amend, alleging that Clarke and Robinson have breached a "contract," namely, the Release of Liability

---

[9] The court will broadly construe the complaint as possibly attempting § 1983 claims against Clarke and Robinson in conjunction with events at S1SP, however, and so will not dismiss all federal claims against them at this time.

12

form that Ballance was required to sign, pursuant to Virginia Department of Corrections ("VDOC") operating procedures. The form states, in pertinent part:

> Each offender must complete this form prior to, and as a condition of, possessing or acquiring personal property while an offender [is] confined in a [VDOC prison facility]. . . .
>
> I understand that my possession of personal property, in addition to state issued property, in this facility is a privilege. From time to time, [VDOC] employees may store, transport, inspect, or otherwise control my personal property. I recognize that accidents or other events may occur which may result in the theft of, loss of, or damage to my personal property. The liability of the [VDOC] shall be limited to no greater than fifty dollars ($50.00) for any item of personal property and that reimbursement or replacement is limited to damage, loss or theft only when such property is in the possession of a [VDOC] employee . . . and shall not include normal wear and tear, or damage incidental to searches, transportation of personal property, or other incidents, including but not limited to, theft or damage by other offenders, disturbances, riots, fires and flood. Reimbursement will be limited to the actual depreciated value of the item at the time of damage or loss. Items with a value exceeding the limits specified in this procedure are retained solely at my risk.
>
> In consideration of the above and except as noted in Operating Procedure ["OP"] 802.1, IV, B, Extent of Liability, 4 and in recognition and assumption of all risks and dangers of damage to, loss of, or theft of personal property, I agree to hold the [state, the VDOC,] and its employees harmless with regard to any loss of, theft of, or damage to my personal property. I further release the [state, the VDOC,] and its employees from any and all legal liability and claims which may arise with regard to my personal property, and agree not to bring any lawsuit . . . regarding my personal property or to recover money on account of any loss of, or theft of, or damage to my personal property.
>
> Notwithstanding the above, I retain all rights and remedies under the [VDOC grievance procedures] and I further recognize that my sole and exclusive right to seek recovery against the [state] or its employees regarding my personal property, or for any loss of, theft of, or damage to my personal property, is that provided by [OP] 802.1 and the [inmate grievance procedures] or by written appeal to the Unit Head. I further recognize that I am free to seek to make my own arrangements to insure my personal property with an insurance company of my choice.

Ballance, 2017 WL 1169747 at *2-3 (quoting the Release of Liability form).[10] The VDOC property policy itself, OP 801.2(III), available online and attached to a defense motion, defines personal property as "[a]ny item belonging to an offender that has been acquired and authorized for possession by the offender, excluding authorized state-issued property." See Naff Aff. Encl. B, ECF No. 27.

In his amended claim, Ballance provides a list of personal property items and the monetary value he has assigned to each of them. They appear to be the items allegedly taken from him by the GRCC defendants. However, Ballance does not explain when or why each property item was confiscated or otherwise removed from his possession, what happened to the item, or how he arrived at the monetary values he has assigned. Ballance contends that he has tried to use the grievance procedure to seek reimbursement for the monetary value of the parts of his manuscript and other property items, as promised in the Release of Liability form, but he has been unsuccessful in recovering any monetary award from prison officials.

The court will grant Ballance's motion to amend to add a possible supplemental claim. This claim, however, relates solely to events that occurred at GRCC, and for the reasons discussed, supra, the court will dismiss all federal claims regarding those events and defendants. Accordingly, the court declines to exercise supplemental jurisdiction over Ballance's state law

---

[10] While Ballance does not attach a copy of the Release of Liability form to his motion to amend or the complaint, he refers frequently to this prior lawsuit. Compl. 10, ECF No. 1. His amended claim here is clearly referring to the same form that was quoted in that lawsuit.

claim, pursuant to 28 U.S.C. § 1367(c), and will dismiss it without prejudice so that Ballance may pursue it in state court.[11]

D. The Motion to Sever.

Finally, the S1SP defendants have moved to have the plaintiffs' § 1983 claims against them severed and transferred. For the reasons stated, the court will overrule the plaintiffs' objections and grant the defendants' motion.

Under Rule 21 of the Federal Rules of Civil Procedure, the court has broad discretion to sever any claim against a party. See Grigsby v. Kane, 250 F.Supp.2d 453, 456 (M.D. Pa. 2003) ("court has virtually unfettered discretion in determining whether or not severance is appropriate"). The court finds that the factors relevant to the issue weigh in favor of severance.

First, severance and transfer of the S1SP claims would place these claims in the proper venue. For a lawsuit raising a federal question, venue is proper (a) in a judicial district where any defendant resides, if all of the defendants reside in the forum state, (b) in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, or if neither of these conditions is met, (c) in a judicial district "in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2). The S1SP defendants' alleged actions occurred at that prison facility, which is located within the jurisdiction of the Eastern District. Moreover, the residence of a public official (like the defendant prison officials) is generally deemed to be the jurisdiction where he conducts his official business. Lengacher v. Reno, 75 F. Supp. 2d 515, 518 n.5 (E.D. Va. 1999). Thus, venue for the S1SP claims is not proper

---

[11] Section 1367(d) states that "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). This provision was specifically designed to prevent the limitations period on supplemental claims, over which the district court declines to exercise jurisdiction, "from expiring while the plaintiff was fruitlessly pursuing them in federal court." Jinks v. Richmond County, 538 U.S. 456, 459-60 (2003). In light of this tolling provision, the court finds it appropriate to decline supplemental jurisdiction over Ballance's supplemental state law claim.

in the Western District, because none of the S1SP defendants resides here. In the interest of justice, this court may sever and transfer the S1SP claims to that court as being the more appropriate venue and the more convenient forum. See 28 U.S.C. § 1406(a).

Second, the S1SP claims and evidence related to them are distinct from the GRCC claims, and the defendants would be more greatly prejudiced by keeping the claims against them in this district.

> Courts have recognized a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so "distinct and separable" from the others that a trial of that issue alone may proceed without injustice.

Equal Rights Ctr. v. Equity Residential, 483 F. Supp. 2d 482, 489 (D. Md. 2007). Thus, in deciding whether Rule 21 severance of claims is appropriate, the court should "consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof;" and how the parties will be prejudiced. Id. Here, it is undisputed that the S1SP claims involve different actors at different locations engaging in different conduct at different times involving different property items than did the GRCC claims. Accordingly, the witnesses and documentation related to the S1SP claims will be distinct from the witnesses and documents necessary to the GRCC claims. Relevant defense witnesses will be employees at that prison, not at GRCC. Expending the required additional resources for witnesses and defendants from S1SP to participate in a Western District trial could significantly impact prison operations.

On the other hand, the court cannot find that the plaintiffs will be so prejudiced by the transfer of their S1SP claims. Ballance is currently confined at S1SP, located within the jurisdiction of the Eastern District. Moreover, although Wohlford resides in Vinton, Virginia, in

16

the Western District, if court proceedings are scheduled in the Eastern District in the future, Wohlford can explore the option of participating via telephone conferencing or other means to avoid travel costs.

For the stated reasons, the court finds severance and transfer of the S1SP claims to be appropriate and in the interest of justice. Accordingly, the court will overrule the plaintiffs' objections and grant the defendants' motion.

### III.

Based on the foregoing, the court concludes that the plaintiffs' claims under § 1983 against the GRCC defendants must be summarily dismissed for failure to state a claim on which relief can be granted. See 42 U.S.C. § 1997e(c)(1). The court will grant Ballance's motion to amend, but will decline supplemental jurisdiction over the state law claim it raises, and dismiss that claim without prejudice. See 28 U.S.C. § 1367(c). Finally, the court will grant the S1SP defendants' motion to sever and transfer the claims against them to the Eastern District. An appropriate order will enter this day.

**ENTER:** This 30th day of March, 2019.

_____
Senior United States District Judge