IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Kevin Ballance,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:19cv330 (LMB/MSN) |
| Zook, et al.,<br>    Defendants. | )<br>)<br>) |

MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment [Dkt. No. 76] ("Motion") filed by defendants Harold Clarke ("Clarke"), A. David Robinson ("Robinson"), H. Spencer ("Spencer"), D. Zook ("Zook"), R. Evans ("Evans"), and T. Mayo ("Mayo) (collectively "defendants") in this civil rights action initiated by Kevin Ballance ("plaintiff Ballance" or "Ballance") and Phillip Wohlford ("Wohlford"). Wohlford was dismissed from this action on July 14, 2021.[1] Broadly construed, the complaint alleges that defendants violated Ballance's constitutional rights in two ways: (1) by conspiring with other officials within the Virginia Department of Corrections ("VDOC") to confiscate materials related to a book he was writing with Wohlford and (2) by actually seizing those materials, which Wohlford had mailed to Ballance at Sussex I State Prison ("SISP") and denying Balance access to similar materials mailed by Wohlford. [Dkt. Nos. 1, 43]. Despite being provided a clear Roseboro notice[2] advising him of his right to respond to

---

[1] On June 7, 2021, an Order that had been mailed to Wohlford was returned to the courthouse as undeliverable, bearing the notation "Not at this Address – Return to Sender." [Dkt. No. 93]. This returned mail followed the submission of several documents that were signed by only Ballance. [See, e.g., Dkt. Nos. 83, 84, 85, 87, 88, 92]. Consequently, by Order dated July 14, 2021, the Court dismissed Wohlford from this action for abandonment of the litigation and his failure to maintain an up-to-date address with the Court. [Dkt. No. 96].

[2] See Roseboro v. Garrison, 528 F.2d 308 (4th Cir. 1975).

defendants' Motion, Ballance has failed to do so. Because there is no dispute as to any material fact and it is clear that defendants are entitled to judgment as a matter of law, defendants' Motion for Summary Judgment will be granted.

I

A.  *Procedural History*

This civil action was originally filed in the United States District Court for the Western District of Virginia and included claims based on alleged events in both the Western District and the Eastern District of Virginia. Specifically, the complaint alleges that administrative officials of the VDOC, officials at Green Rock Correctional Center ("GRCC"), which is in the Western District, and officials at SISP, which is in the Eastern District, violated plaintiff's constitutional rights in several ways. [Dkt. No. 1]. In a thorough Memorandum Opinion assessing a Motion to Dismiss, Judge Conrad of the Western District construed the pleadings as raising the following five claims for relief:

1. The GRCC defendants destroyed Ballance's book manuscript to punish or retaliate against him for exercising his First Amendment right to author a book.

2. The GRCC defendants destroyed several boxes of plaintiff's property because Ballance refused to sign a confiscation form after GRCC defendants confiscated his manuscript.

3. The administrative defendants allowed the VDOC's Publication Review Committee to apply the VDOC's anti-nudity policy inconsistently regarding incoming publications.

4. The SISP defendants conspired with the GRCC defendants to confiscate additional materials related to Ballance's book manuscript, specifically "the movie list and the proof sheets that Ballance had received in the mail from Wohlford." [Dkt. No. 1] at 12.

5. Despite Wohlford's status as the proprietor of a home business, the SISP defendants interfered with correspondence between Ballance and Wohlford by seizing from plaintiff's cell the materials referred to in Claim 4 and stopping delivery of additional proof sheets sent by Wohlford.

[Dkt. No. 55] at 5.

Judge Conrad dismissed Claims 1, 2, and 3 and granted defendants' motion for severance and transfer of Claims 4 and 5. Id. at 15-17. Accordingly, only Claims 4 and 5 are before this Court and the statement of undisputed facts only contains information relevant to these claims.

### B.  *Undisputed Facts*

Ballance has not responded to defendants' Motion for Summary Judgment despite receiving a Roseboro notice informing him that his failure to respond would result in the Court deciding the Motion based on the papers already filed by the plaintiff and the defendants, including any affidavits and other papers submitted in conjunction with defendants' Motion. [Dkt. No. 78]. Instead of responding to the defendants' Motion, Ballance filed a second motion for discovery that duplicated one the Court has already denied.[3] [Dkt. No. 91]. Accordingly, the Court will decide defendants' Motion based on the papers already filed by the parties. Because plaintiff's original complaint was sworn under penalty of perjury, [Dkt. No. 1] at 20, the Court

---

[3] Ballance's motion for discovery is not grounds to deny or delay consideration of defendants' Motion for Summary Judgment. The Federal Rules of Civil Procedure allow a court to deny or defer consideration of a motion for summary judgment when the party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." See Fed. R. Civ. P. 56(d). Although pro se litigants need not necessarily abide by the formal affidavit requirement, see Putney v. Likin, 656 F. App'x 632, 638 (4th Cir. July 14, 2016), a pro se party still must convince the Court that the discovery materials he requests are "essential" to his opposition, see Fed. R. Civ. P. 56(d); Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995).

Plaintiff has not satisfied this high bar. As explained in the Court's July 14, 2021 Order denying his discovery motion, some of the evidence plaintiff requested—namely books allegedly confiscated in the Western District of Virginia—were irrelevant to the claims before the Court. [Dkt. No. 96]. In addition, defendants have stated that they do not possess the other materials plaintiff requested. See [Dkt. No. 89] at 3 ("[T]hose materials ... would have either been destroyed or delivered to individuals outside of the prison, over whom these Defendants have no control."). Moreover, the complaint alleges that the materials defendants allegedly removed from Ballance's cell were items on which he and Wohlford had collaborated. See [Dkt. No. 1] at 12 ("They took the movie list and the proof sheets that Ballance had received in the mail from Wohlford."). Accordingly, Ballance or Wohlford could have submitted an affidavit or declaration describing those materials in opposition to defendant's summary judgment motion.

3

has considered the facts contained in the complaint when determining the facts that are not in dispute.

Ballance is currently serving multiple life sentences for several counts of forcible sodomy, aggravated sexual battery, abduction, and taking indecent liberties with a child. [Dkt. No. 77-7]. For some time before the filing of this civil action, he had been preparing a book manuscript that compiled information about, and still images from, foreign motion pictures. [Dkt. No. 1]. Ballance entered a partnership with Wohlford, who operated a home business called "Typing and Inmate Services." Id. at 4. According to the terms of their agreement, Ballance would mail Wohlford written materials, which Wohlford would digitally compile and return to Ballance. Id. at 4, 11.

On November 27, 2017, while Ballance was incarcerated at GRCC, prison staff "told [Ballance] to pack up his personal property for transfer" to SISP, another facility within the VDOC. [Dkt. No. 1] at 4. At GRCC's property office, Officer Naff "discovered [Ballance's] book manuscript ... and told Ballance that he was going to sign a paper saying that [Naff] can destroy the book manuscript." Id. Although Ballance declined to sign a form consenting to or acknowledging the confiscation, officials nevertheless seized the manuscript. Id. at 5.

Ballance later arrived at SISP and received a box of property containing, among other items, "an illustration list" for the foreign film book manuscript. Id. at 12. Eager to continue their progress on the draft, Ballance and Wohlford "worked on" the illustrations. Id. Eventually, SISP officials conducted a search of plaintiff's cell, where they found plaintiff's "movie list and the proof sheets that Ballance had received in the mail from Wohlford."[4] Id. Because these

---

[4] Ballance contends that the individuals who carried out this search were defendants Evans and Mayo. [Dkt. No. 1] at 12. Evans attests that he does not remember conducting any such search but does not rule out the possibility. [Dkt. No. 77-3].

4

documents depicted nudity, they were removed from Ballance's cell and taken to defendant Spencer for review. [Dkt. Nos. 77-1, 77-5].

VDOC Operating Procedure ("OP") 802.1 sets forth the procedures governing possession of personal property by state prisoners. [Dkt. No. 25-2]. The acquisition and possession of written publications is subject to the additional guidelines of OP 803.2, which, pertinently, bans offenders from possessing materials that "[c]ontain nudity or any other sexually explicit acts." OP 803.2(IV)(A)(4)(c). The policy contains an exception for publications "generally recognized as having literary value," id., as well as publications "containing nudity illustrative of anthropological, educational, or medical content." OP 803.2(IV)(N)(5).

The VDOC cites several reasons for its adoption of the policy, over which it deliberated for approximately seven years before adopting it. Ultimately, the VDOC concluded that permitting inmates access to explicit materials undermines the VDOC's effort to rehabilitate inmates, particularly inmates like Ballance who have been convicted of sexual offenses. [Dkt. No. 25-10]. VDOC also found that possession of materials depicting nudity threatened institutional security by contributing to stealing, fights, assaults, and gambling among the prison population, and VDOC considered the frequent complaints of discomfort from prison staff members who, in sorting and screening mail, were required to review a high volume of sexually explicit material before the ban went into effect. Id.

## II

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the

governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III

As discussed above, the only two claims before the Court are claims that (1) officials at SISP conspired with officials at GRCC to seize materials related to plaintiff's book project—namely a "movie list and the proof sheets that Ballance had received in the mail from Wohlford" [Dkt. No. 1] at 12; and (2) that SISP officials later did seize those materials from plaintiff's cell and "denied delivery" of additional photo proof sheets mailed to plaintiff by Wohlford. Because the seizure of the materials related to Ballance's manuscript appears to be the alleged constitutional violation on which the civil rights conspiracy claim is predicated, it will be addressed first.

A.  *Confiscation of Mailed Manuscript Materials*

Ballance asserts that defendants violated his constitutional rights when they confiscated the written materials he had been compiling with Wohlford through the mail and blocked delivery of similar materials. This claim is most logically construed as arising under the First Amendment.

Although under the First Amendment a prisoner has a right to send and receive mail, a prison's restrictions on inmate mail are constitutionally valid if they are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 490 U.S. 401, 409 (1989); see also Turner v. Safley, 482 U.S. 78, 89 (1987); United States. v. Stotts, 925 F.2d 83, 85-86 (4th Cir. 1991). In considering the constitutionality of prison mail restrictions, courts consider (1) whether the restriction or regulation is related to a legitimate and neutral governmental objective; (2) whether there are alternatives that remain open to inmates to exercise their right; (3) the impact that accommodating the asserted right will have on guards, other prisoners, and the allocation of prison resources; and (4) whether the existence of an easy and obvious alternative shows that the regulation is an exaggerated response by prison officials. Turner, 482 U.S. at 89-90. A higher level of scrutiny is applied to restrictions on incoming mail as compared to outgoing mail. See Thornburgh, 490 U.S. at 413.

Assessed under this framework, it is clear that OP 803.2—which prohibits inmate possession of materials containing images of nudity, irrespective of how those materials were acquired—is a constitutionally valid restriction on Ballance's First Amendment rights. First, according to defendants, restricting inmates from possessing materials depicting nudity furthers the VDOC's desire to maintain security and rehabilitate offenders, and "[i]t is beyond question that [prison security and inmate rehabilitation] are legitimate penological interests." Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (quoting Thornburgh at 414). Additionally, defendants assert—and Ballance does not deny—that allowing materials containing nudity into prisons requires prison staff to more frequently encounter such content in the process of screening incoming correspondence, a process that creates an uncomfortable work environment. Finally, there can be no debate that the adoption of OP 803.2 did not represent an "exaggerated

response" on the part of the VDOC; the agency deliberated the policy for around seven years before enacting it. Cf. Fauconier v. Clarke, 257 F. Supp. 3d 746, 758 (W.D. Va. 2017) (stating that "[t]he amount of time spent deliberating suggests that the regulation is not an exaggerated response to the existing concerns"). Additionally, plaintiff has not proffered any reasonable alternatives to the operating procedure he claims is unconstitutional, and under Turner, "the existence of obvious, easy alternatives to a prison policy restricting constitutional rights may be evidence that the policy is an exaggerated response." Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993) (citing Turner, 482 U.S. at 90-91).

Operating Procedure 803.2 has been upheld by federal courts in Virginia, see, e.g., Fauconier v. Clarke, 257 F. Supp. 3d 746 (W.D. Va. 2017), and similar bans on possession of sexually explicit content have routinely been upheld by federal courts for over twenty years, see, e.g., Amatel v. Reno, 156 F.3d 192, 196-97, 214 (D.C. Cir. 1998) (holding that a ban on distribution of material that is "sexually explicit or features nudity" is reasonably related to legitimate penological interests); Bahrampour v. Lampert, 356 F.3d 969, 976 (9th Cir. 2004) (upholding as constitutional an Oregon Department of Corrections regulation that prohibited inmates from receiving mailed publications containing sexually explicit material); Jones v. Salt Lake County, 503 F.3d 1147, 1155-56 (10th Cir. 2007) (upholding as constitutional a county jail's ban on mail containing "sexually explicit material" that included a ban on photographs of "breasts and genitals"). Finally, it is clear that the content that was seized from plaintiff fell squarely under OP 803.2's ambit. Indeed, Spencer has stated in an affidavit that the "documents/photos that were brought to [him] for review contained ... nudity." [Dkt. No. 77-1]. Moreover, in several submissions to the Court, Ballance concedes that the materials seized from his cell contained nudity. [See Dkt. No. 87] at 13 ("There may be two (2) or three (3) nude

scenes in a catalog."); id. at 14 ("The illustrated catalog had a picture of a woman standing in a pond with her back to the camera and you could see the top part of her butt crack."); [Dkt. No. 87-2] at 10 ("Out of the 80 films that were in the proof sheets ... three had nudity.").

In summary, VDOC's OP 803.2 represents a constitutionally valid restriction on Ballance's First Amendment rights, and the seizure of Ballance's property pursuant to that operating procedure was legitimate. Therefore, there is no basis on which to find that defendants violated Ballance's First Amendment rights when they seized his property.

B.  *Civil Rights Conspiracy*

Plaintiff additionally asserts that defendants improperly conspired to impinge on his civil rights. Specifically, he alleges that the SISP defendants collaborated with the GRCC defendants to confiscate the book-related materials. The record does not support this claim.

A plaintiff faces a "weighty burden to establish [the existence of] a civil rights conspiracy." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To prevail as to such a claim, the plaintiff must produce evidence showing that the defendants acted jointly in concert and that some overt act was taken in furtherance of the conspiracy, resulting in the deprivation of a federal right. Glassman v. Arlington Cty., 628 F.3d 140, 150 (4th Cir. 2010) (citing Hinkle, 81 F.3d at 421). Although the plaintiff "need not produce direct evidence of a meeting of the minds, [the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective" or acted to "accomplish a common and unlawful plan." Hinkle at 421-22.

Here there is no evidence of any collaboration between officials at GRCC and SISP to confiscate plaintiff's materials. Even the verified complaint does not contain any information which could be construed to imply the existence of an agreement between SISP and GRCC

9

officials; it alleges only that Spencer and Zook sent Mayo and Evans to plaintiff's cell to confiscate the materials in question. [Dkt. No. 1] at 12. Because the complaint alleges that all four of these officials worked at SISP, this allegation does not establish a conspiracy between employees of the two prisons. Additionally, because Ballance has failed to establish the existence of any constitutional violation, his claim that any combination of defendants or VDOC officials conspired to violate his constitutional rights also fails as a matter of law. Thompson v. Clarke, No. 7:17-cv-10, 2020 WL 1124361, at *5 (W.D. Va. Mar. 6, 2020) (granting summary judgment to defendants where plaintiff "fail[e]d to evince the underlying constitutional violation necessary for a civil conspiracy under § 1983"). On this basis, defendants are entitled to judgment in their favor.

## IV

For the reasons stated above, defendants' Motion for Summary Judgment will be granted through an Order that will accompany this Memorandum Opinion.

Entered this 23rd day of July 2021.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge